```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           03 Cr. 601 (RWS)

KASEEM STUKES,

                Defendant.
------------------------------x
                                         New York, N.Y.
                                         December 3, 2015
                                         3:10 p.m.


Before:

                    HON. ROBERT W. SWEET,

                                         District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
HARRY A. CHERNOFF
     Assistant United States Attorney

JAMES ROTH
     Attorney for Defendant


ALSO PRESENT:  TERESITA CONTRERAS, Probation (SDNY)
               MICHELLE POWELL, Probation (EDNY)
```

```
 1                (Case called)
 2           MR. CHERNOFF:  Harry Chernoff.  Good afternoon, your
 3   Honor.
 4           MS. POWELL:  Good afternoon, your Honor, Michelle
 5   Powell from the Eastern District of New York.
 6           MS. CONTRERAS:  Good afternoon, your Honor, Theresa
 7   Contreras from the Southern District of New York.
 8           MR. ROTH:  Kaseem Stukes by James Roth for Mr. Stukes.
 9   Good afternoon.
10           THE COURT:  Good afternoon.  What's our plan this
11   afternoon?
12           MR. ROTH:  The plan was that the defendant was going
13   to admit the violations and hopefully proceed to sentence.  He
14   is looking for closure.
15           THE COURT:  Mr. Stukes, you have a right to have these
16   specifications in writing and to have a hearing on those
17   specifications.  What do you wish to do?
18           THE DEFENDANT:  Plead guilty.
19           THE COURT:  I'll accept the plea.  What does the
20   government recommend?
21           MR. CHERNOFF:  Your Honor, just to clarify, I believe
22   there are five specifications.  Can we just --
23           THE COURT:  All five are what?  What are we doing?
24   All five?
25           MR. CHERNOFF:  Sorry, your Honor.
```

1           THE COURT:  That's all right.

2           MR. CHERNOFF:  I think perhaps the only difficulty we
3  are having in deciding how to proceed is the defendant has
4  already pled guilty and served what is likely his entire state
5  sentence.  And to resolve the charges that are listed in the
6  specifications he pled guilty to attempted possession of a
7  weapon.

8           I don't think that anything he says here today can
9  affect that state conviction or affect his sentence.  My
10 understanding is that he has some reluctance to admit to
11 charges that were dropped by the state, but he is prepared to
12 admit possession of the loaded firearm.

13          And the last count in the specifications involves
14 reckless driving, which arose from the chase that followed
15 before the gun was thrown from the car.  We would be prepared
16 to dismiss the other counts if the defendant admits to
17 specification 1 and specification 5.

18          MR. ROTH:  Yes, your Honor.  With the understanding,
19 as I say, being knowledgeable of the New York Penal Law, it was
20 criminal possession of a weapon in the second degree.  He will
21 admit under specification 1 that on October 24, 2013, in the
22 State of New York, specifically in the Bronx, that he was in
23 possession and pled guilty to an attempted possession of a
24 firearm, a felony for that matter, and he will admit in respect
25 to Count Five that on the same date that he was driving a car

1    in a reckless manner in an attempt to avoid an arrest.

2              THE COURT:  That's fine.  Mr. Stukes, you've heard
3    what your counsel has told me.  Do you agree?

4              THE DEFENDANT:  Yes.

5              THE COURT:  What do you propose?

6              MR. CHERNOFF:  Your Honor, we are prepared to proceed
7    to sentencing.  I think the defendant desires to as well.

8              MR. ROTH:  That is correct.

9              MR. CHERNOFF:  Your Honor, this is the defendant's
10   fourth criminal offense arising from gun possession.  We had a
11   trial before your Honor more than a decade ago that arose from
12   the defendant's possession of a gun while selling drugs.  And
13   one of the counts there was predicated on his prior possession
14   of a gun.

15             Since his completion of the sentence that was imposed
16   by your Honor after that trial, the defendant violated once
17   previously for possessing a firearm.  Your Honor revoked
18   supervised release and imposed a term of imprisonment of a year
19   and a day.  The defendant served that term, was released again
20   and now comes before the Court having been found again with a
21   weapon, again as to one of the prior instances, as was the case
22   in one of the prior instances, the gun in a car.  It seems to
23   be a losing battle here to have the defendant out on
24   supervision when he continues to flout the gun laws of our
25   state and our country.  And so I think it's appropriate to

1  impose a substantial term of revocation and I leave it to
2  probation as to whether they believe supervision should follow
3  at that point.
4             THE COURT:  You said a substantial term.  Is that what
5  you said?
6             MR. CHERNOFF:  I did, your Honor.  As your Honor came
7  in, we were just trying to calculate what the maximum is and
8  what the guidelines are.  I think --
9             THE COURT:  Looks to me like the guideline is 13 to
10 25, yes?
11            MR. ROTH:  In the event that they were consecutive,
12 yes, Judge.
13            THE COURT:  Yes.  That's what I mean.
14            MR. ROTH:  We all concur on that.
15            THE COURT:  Mr. Roth, anything you want to tell me?
16            MR. ROTH:  Yes, Judge.  Mr. Stukes has obviously had
17 some downs and I'll address some ups that he has had while he's
18 out.  The ups, your Honor, is while he was out he attempted to
19 and did reunite for a brief while with the mother of his child
20 who he flew up from California and his child to visit him while
21 he was under supervision.
22            Additionally, your Honor, he was gainfully employed.
23 Probation is looking at me now.  To my knowledge, he was
24 gainfully employed at Pepi's Mercedes Benz dealership in New
25 Rochelle, New York.  He has made some strides despite a lot of

1  adversity.  I know he was also doing some community work at
2  some point.
3           Judge, he has on this gun possession, which I
4  understand has two purposes for sentencing today, but on the
5  gun possession he received a sentence of one and a half to
6  three years in prison.  He served a full two years in prison on
7  that gun charge and it's my understanding that one of the
8  reasons he served more than the minimum, the one and a half,
9  was because shortly after his arrest in October 2013, this
10 warrant dropped on him and that's why he is here today, for the
11 gun case.  I am asking your Honor to take into consideration
12 that he has already served two years on this case and that the
13 warrant has been extant for at least a good portion of that
14 time.  I think a guidelines sentence would be appropriate and
15 take into consideration the time that he's done in already.
16          THE COURT:  Anything you would like to tell me,
17 Mr. Stukes?
18          THE DEFENDANT:  Yes.
19          THE COURT:  I'm pleased to hear you.
20          THE DEFENDANT:  Through my time, through my time out I
21 have had some ups to where life was great, to where I was
22 working, establishing stuff, establishing myself.  As Mr. Roth
23 stated, I was able to have my son come up to see his two
24 sisters for the first time.  And I apologize for all the
25 inconvenience to the Court and to the people.  I'm looking

1  forward to being united with my family and my kids before they
2  become adults so I can show them the way of life.  Today I'm
3  asking for the Court leniency.  Today I have heard justice for
4  me, which is punishment, and I feel I've been dealing with
5  punishment for quite some time through this period.  And if I
6  was released today, I would still be under the government
7  control.  That's why I ask the Court leniency for today, mercy.
8          THE COURT:  Thank you, sir.
9          Anything from the government?
10         MR. CHERNOFF:  Your Honor, just that it is often the
11 case that defendants come before the Court when there is a
12 violation that arises from a state conviction where sentence
13 was imposed.  I don't know whether the state judge also took
14 into account that there would be a federal sentence likely to
15 follow, but, in any case, the revocation is, of course, a
16 separate matter.  So we submit a sentence that is appropriate
17 to this conduct is imposed based on what's before the Court on
18 this case.
19         THE COURT:  How long has Mr. Stukes been in on this
20 charge?
21         MR. CHERNOFF:  I believe he's been in for two years
22 since his arrest --
23         THE COURT:  No.  I mean your charge, federal custody.
24         MR. CHERNOFF:  He was presented two months ago or less
25 than that.  We had a conference a few weeks ago that was

1  adjourned.  And before that he was presented in magistrate
2  court.
3          THE COURT:  Roughly two months.
4          MR. CHERNOFF:  I believe so, your Honor.  I don't mean
5  to detract from any of the accomplishments Mr. Stukes has made
6  in his personal and family life, but what's troubling about the
7  reference to his child's mother -- and I don't know if this was
8  the woman who was in the car with him, but he was arrested with
9  a Dominique Stukes who he also involved with in this high-speed
10 car chase, gun was thrown out her side of the car and she was
11 arrested as well.  I don't know what happened to the case.  To
12 my mind, that makes this particular gun possession in a car
13 aggravated because in some of the other occasions at least he
14 was on his own.
15         THE COURT:  Mr. Stukes, I'm sorry to see you here.
16 I'm sorry about these events.  I think you have to be
17 sentenced.  I will give you as much slack as I possibly can in
18 hopes that you can straighten yourself out and stop this kind
19 of conduct.
20         I'll impose a sentence of 14 months.  Is there
21 anything else?  What do we do about supervised release, extend
22 it?
23         MR. CHERNOFF:  Your Honor, I think the term that can
24 be imposed is another three years of supervised release.  But
25 probation doesn't have a particular recommendation as to that.

1            THE COURT:  If we don't impose additional time, how
2    much time has he got left?  In other words, it's some period or
3    nothing, right?  And that's up to me.
4            MR. CHERNOFF:  Yes, your Honor, I believe so.
5            THE COURT:  We will make it a year and a half.
6            Anything else?
7            MS. POWELL:  Your Honor, there was an issue about his
8    special conditions being reimposed.
9            THE COURT:  Yes.  Same conditions.  Anything else?
10           MS. CONTRERAS:  If we can add vocational training,
11   that he attend some kind of vocational training.
12           THE COURT:  Sure.
13           MR. ROTH:  He would love that and he would love to be
14   able to participate in a halfway house as well.
15           THE COURT:  Sure.  I will make that recommendation.
16   Anything else?  Thanks very much.
17           MR. CHERNOFF:  Sorry, your Honor.  I think the
18   probation officer just wanted to add --
19           MS. POWELL:  Sorry, your Honor.  I wanted to clarify.
20   When defense counsel said about halfway house, are we doing it
21   as a placement?  Because we are not recommending halfway house.
22   If you are going to do that, that's additional months that we
23   would have to place him in the halfway house.  That's not what
24   we were recommending.
25           MR. ROTH:  We were hoping that it was a split

1  sentence.

2   MS. POWELL: That's what I thought. We want to make
3  sure that's clear. We weren't advocating halfway house as a
4  split sentence. We weren't advocating halfway house at all.
5  We were merely advocating that upon his release from custody he
6  would get his special conditions reimposed, be it the substance
7  abuse treatment, the mental health treatment, the search
8  condition, and now we are adding vocational training. Defense
9  counsel has now mentioned halfway house, which I'm unsure as to
10 the capacity of that.

11  THE COURT: Is that my decision? I don't think it is.
12 I can recommend it and I will. I guess that's up to the
13 bureau, I assume.

14  MS. CONTRERAS: Can I say something, your Honor. I
15 would suggest that in place of a halfway house that he goes
16 into residential treatment where they will deal with the mental
17 health, the drug abuse, the vocational training, the housing.
18 He could be there like up to nine months and have the benefit
19 of treatment and hopefully come out with all these things in
20 order.

21  THE COURT: What are you telling me, that I should
22 recommend a halfway house after nine months?

23  MS. CONTRERAS: Well, if they would consider that
24 instead of going to a halfway house that he goes into a
25 residential treatment program so that he can go straight into

the residential treatment program.

THE COURT: Ok. I will make that recommendation.

MS. CONTRERAS: I'm sorry, your Honor. If he is ordered to go into residential treatment, we need an actual order saying that he is ordered to go into residential and long-term treatment.

THE COURT: You have it.

MR. CHERNOFF: Sorry, your Honor. We are in a bit of disarray.

I'm sorry, your Honor, just to be clear, what the probation officer just recommended to the Court was residential treatment that would occur in lieu of a portion of the time that your Honor just imposed in revocation.

THE COURT: I understand.

MR. CHERNOFF: Which I thought might be contrary to what the Court --

THE COURT: No. That's fine.

MR. ROTH: Hopefully he will benefit from it.

THE COURT: Anything else?

MR. CHERNOFF: Your Honor, if the Court could just advise the defendant of his right to appeal the sentence.

THE COURT: You have such a right, Mr. Stukes, to appeal and to be represented free of charge on that appeal if you don't have funds. Thanks.

MR. CHERNOFF: Thank you, your Honor. (Adjourned)