```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              03 Cr. 601 (RWS)

KASEEM STUKES,

                Defendant.

------------------------------x
                                            New York, N.Y.
                                            February 9, 2016
                                            4:00 p.m.


Before:

                    HON. ROBERT W. SWEET,

                                            District Judge


                        APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
HARRY CHERNOFF
    Assistant United States Attorney

JAMES ROTH
    Attorney for Defendant


Also Present:  Elizabeth Cuprill, SDNY Probation

               Michelle Powell, EDNY Probation
```

1            THE DEPUTY CLERK:  United States of America versus
2    Kaseem Stukes.
3            Government, are you ready?
4            MR. CHERNOFF:  Yes.  Harry Chernoff for the
5    government.  With me to my immediate left is Probation Officer
6    Elizabeth Cuprill from the Southern District of New York, and
7    next to her is Michelle Powell from the Eastern District of
8    New York.  Good afternoon.
9            THE DEPUTY CLERK:  Defendant, are you ready?
10           MR. ROTH:  The defense is ready.  James Roth on behalf
11   of Mr. Kaseem Stukes.
12           THE COURT:  Nice to see you, Mr. Roth.
13           Have you all discussed where we are and what should be
14   done?
15           MR. CHERNOFF:  I'm not sure we've agreed on what
16   should be done.  I had asked for this conference just to
17   clarify the sentence that your Honor intended to impose, not in
18   any way to reargue it.  But I think the confusion that we
19   realized had been created by different phrases that us at
20   counsel table were using, there was a question of whether a
21   halfway house or a residential treatment, which are two
22   different things, as the Court knows, would be recommended.
23           Then there was also the question of whether the term
24   of imprisonment that your Honor had first articulated would be
25   reduced so that either one of those things -- and I think we

1  settled on residential treatment -- could be used as a portion
2  of the term of supervised release.
3       What I'm trying to say is that residential treatment
4  cannot be imposed, as the BOP sees it, as a term of
5  imprisonment --
6       THE COURT: Back up a little bit and refresh my
7  recollection as to how we got here.
8       MR. CHERNOFF: At sentencing, your Honor imposed a
9  guideline sentence of 14 months' imprisonment. At that point,
10 Mr. Roth suggested that the defendant could benefit from a
11 halfway house. And while the Court was considering that, the
12 probation officer, who was covering that day from our district,
13 said that maybe residential treatment would benefit the
14 defendant even more.
15      I think we had a bit of a huddle there at that moment
16 because the probation officer who supervises the defendant,
17 Ms. Powell, was not in agreement with that recommendation. But
18 without having resolved it on our own in terms of what to
19 recommend, your Honor asked whether you should impose a term of
20 halfway house after nine months of imprisonment, then there was
21 a little bit more discussion about how there would be
22 residential treatment in lieu of a portion of the term of
23 imprisonment.
24      I guess it wasn't clear whether the Court wanted to
25 reduce the term of imprisonment by a certain number of months

1  and then have the residential treatment be a portion of the
2  same year and a half of supervised release that the Court had
3  originally imposed during that proceeding, or whether the term
4  of supervised release would be extended to encompass the
5  residential treatment.
6              I think what we need to resolve is simply what would
7  the term of imprisonment be.  If your Honor is inclined to
8  impose residential treatment to follow the term of
9  imprisonment, and generally that should be a seamless thing to
10 go from prison to the residential treatment, of course, then
11 the question would just be how much additional supervised
12 release beyond the term of -- well "term" might be the wrong
13 word -- but the portion of supervised release that is dedicated
14 to the residential treatment should follow.
15             THE COURT:  What's your understanding of where we are,
16 Mr. Roth?
17             MR. ROTH:  Judge, it's somewhat in keeping with what
18 Mr. Chernoff said, but I had thought that the Court was
19 receptive to the notion that Mr. Stukes needs something -- he
20 needs his punishment for sure for violating his terms of
21 supervised release, but he also has other needs that need to be
22 addressed in terms of trying to get him on the path towards
23 rehabilitation.
24             I thought that some -- and my understanding was that a
25 halfway house, if one is placed in a halfway house at the end

1  of the term of imprisonment, one can leave the halfway house to
2  participate in a drug program.  Albeit, then it would not be a
3  residential drug program, it would be, he'd be residing in a
4  halfway house at the end of whatever term your Honor imposes,
5  and he would going out to a drug treatment program.
6          Since my belief that he needs some programs, if you
7  will, has been only solidified since we've appeared before you
8  last, he's actually doing as well as can be expected in MDC,
9  where there is, as your Honor knows, very limited programs, but
10 he did provide me with, just today, a letter from his work
11 supervisor showing that he's a hard worker and volunteers for
12 extra work.
13         I also was able to go back and see that when he was in
14 Rikers serving time for his underlying conviction for the
15 possession of a weapon, attempted possession, he completed an
16 aggression management program there.
17         I would also add that since our last appearance I was
18 able to obtain the sentencing minutes for the underlying case
19 which gives rise to this violation of supervised release, and
20 that judge -- mindful that, of course, in deference to you,
21 it's not binding -- but Judge Weber recommended that any
22 sentence that was imposed by virtue of the violation of
23 supervised release run concurrent with the term that she had
24 imposed and which he has already served of the one and a half
25 to three years, which he actually did two years.  Of course,

1   that's not binding on your Honor, and I understand the
2   guideline favors a consecutive term -- recommends a consecutive
3   term for a violation of supervised release, but with that whole
4   scenario and his history, I think in keeping with your Honor's
5   sentence, I think if your Honor is not going to give him or is
6   unable to -- I think you are able to recommend a halfway house.
7   It's not binding for sure on the Bureau of Prisons. But if you
8   were so inclined, then the 14-month term should be reduced so
9   that the other period of time would serve him well in terms of
10  permitting him to avail himself of some resources.
11          THE COURT: Forgive me. I want to apologize to all
12  present for being unclear, which apparently I was, and
13  regrettably still am.
14          The halfway house and residential treatment are not
15  the same, I take it.
16          MR. CHERNOFF: That's correct, your Honor. We're
17  agreed on that.
18          MR. ROTH: Yes.
19          THE COURT: If the halfway house is a recommendation,
20  explain to me about that. The halfway house is just my
21  recommendation that the last part of the term be served in a
22  halfway house rather than in jail.
23          MR. CHERNOFF: That's correct, your Honor. That's
24  what I believe the BOP does do with all defendants who they
25  deem eligible for halfway house as a transitionary phase

1   between imprisonment and return to the community.
2              THE COURT:  Excuse me.  But you say that's routine?
3              MR. CHERNOFF:  Yes, it is, your Honor.
4              THE COURT:  In other words, I don't even have to make
5   the recommendation.
6              MR. CHERNOFF:  Exactly, your Honor.  The BOP,
7   certainly more these days than ever before, is eager to put
8   people into halfway houses when they can qualify for them.
9              THE COURT:  Okay.  So that takes the halfway house off
10  the page.  There's no point in my getting involved with the
11  halfway house if it's going to happen anyhow, if the Bureau of
12  Prisons and probation think it's an appropriate thing.
13             So that brings us to the residential treatment.
14  Mr. Roth, what's your view about that?  That would be a
15  condition of supervised release.
16             MS. POWELL:  Right.  Yes, your Honor.
17             THE COURT:  I think that's a good idea.
18             MR. ROTH:  Yes.  Judge, the defendant would like to
19  avail himself of a residential treatment, your Honor, as a
20  component of the sentence.
21             THE COURT:  Okay, fine.
22             MR. ROTH:  Hopefully, that will shorten the sentence.
23             THE COURT:  What do we need to do?  Does that need a
24  term?
25             MR. CHERNOFF:  I think I understand, your Honor.  The

1  residential treatment, which requires the defendant, of course,

2  to remain in the residence the whole time, is something that

3  they will make an assessment as to how long he should stay

4  in --

5          THE COURT:  Okay.

6          MR. CHERNOFF:  -- once he enters it, but it could be

7  no longer than the term of supervised release that your Honor

8  imposes.

9          THE COURT:  That's fine.  Okay.  That's good.  So

10 correct me if I'm wrong, please.  The decision will be as set

11 forth in terms of imprisonment, and a condition of supervised

12 release will be residential treatment.  How does that work?

13         MR. CHERNOFF:  Your Honor, the residential treatment,

14 which will be a portion of the term of supervised release --

15         THE COURT:  Yes, maybe, who knows.

16         MR. CHERNOFF:  Right.  So that should be imposed as a

17 portion of the term of supervised release.  The last sentencing

18 your Honor had imposed a term of a year and a half --

19         THE COURT:  Yes.

20         MR. CHERNOFF:  -- of continued supervised release.

21 The original sentence of imprisonment that would precede that,

22 your Honor had imposed 14 months of imprisonment.  At the end

23 of that proceeding, and this is where some of the confusion, at

24 least on my part, had crept in, I had ask whether your Honor

25 intended residential treatment to be in lieu of some of the

1  imprisonment, and the Court had said "yes", as I understood it.

2      THE COURT:  But that obviously was an error.

3      MR. CHERNOFF:  Yes.  In other words, the residential
4  treatment cannot be a component to the term of imprisonment.
5  If the Court wants to reduce the term of imprisonment, that is,
6  of course, to your discretion.

7      THE COURT:  Does that make sense to you, Mr. Roth?

8      MR. ROTH:  Well, it makes sense, but we were hopeful
9  that, in light of the fact that your Honor was going to impose
10  residential treatment, that the set term of imprisonment get
11  reduced.

12      MS. POWELL:  Your Honor, if I may be heard?

13      THE COURT:  Sure.

14      MS. POWELL:  I'm the probation officer who is actually
15  supervising Mr. Stukes, and I want to bring to your attention
16  what we had proposed as a probation department.

17      We had agreed with your Honor to the 14 months of
18  custody because that was the high-end of the guideline range,
19  the guideline range being 8 to 14 months.  We also agreed with
20  your Honor to the supervised release term being 18 months.

21      I think the problem that came in was afterwards
22  determining what the special conditions should be.  The special
23  conditions come into effect while Mr. Stukes is serving his
24  supervised release term.

25      Defense counsel had argued for a residential treatment

1  hoping to get a reduction in the custodial sentence. The
2  probation department at no time would like or require
3  Mr. Stukes to do residential treatment. We think he should be
4  able to do outpatient drug treatment. So that means while he's
5  in the community, he would be able to go to drug treatment.
6          We also would think that he could benefit from mental
7  health treatment, and we also would ask for the reimposition of
8  a search condition. So that is the argument that we had set
9  forth before your Honor.
10         MR. ROTH: Obviously, Judge, we don't want him to do
11 more time, and he's happy not to do the residential and to seek
12 outpatient treatment as a condition of supervised release, if
13 your Honor is not so inclined to reduce the term of
14 imprisonment.
15         THE COURT: Well, let's get the probation department's
16 recommendation. It is, I take it from what you just said, what
17 Mr. Roth just suggested, that is to say, drug treatment program
18 after the term is served, and I don't have anything -- I mean,
19 that's a condition, I take it, of supervised release. Yes?
20         MS. POWELL: Yes. If that's what your Honor would
21 impose, yes.
22         THE COURT: That's what you would like and you think
23 is appropriate, Mr. Roth?
24         MR. ROTH: Yes. With the exception that I'd like less
25 time of imprisonment for him, that's all. But yes, those are

1  the contours of the sentence, yes.

2           THE COURT:  Then I'm not making residential drug
3  treatment program a condition of supervised release, but rather
4  a drug treatment program.  All right.

5           MR. ROTH:  Yes.

6           THE COURT:  Thank you very much for clarifying what I
7  should be doing.  Is there anything else?

8           MR. ROTH:  Not from the defense.

9           MR. CHERNOFF:  Your Honor, just two things.  If the
10 defendant could be advised first of his right to appeal the
11 sentence the Court has imposed.

12          THE COURT:  Well, of course.

13          Mr. Stukes, you have a right to appeal the sentence
14 and to be represented free of charge if you don't have funds on
15 that sentence.

16          MR. CHERNOFF:  Your Honor, the only other item, just
17 in excess of caution, I did receive a docketed letter from
18 December where Mr. Stukes wrote to the Court complaining that
19 Mr. Roth hadn't visited him about an adjournment we had in this
20 matter, and I gather that that was not a lasting impairment to
21 their relationship.  But if Mr. Stukes could just confirm he's
22 satisfied with his representation?

23          THE COURT:  Mr. Stukes, are you satisfied with
24 Mr. Roth at the moment?

25          MR. ROTH:  Yes.  I don't have any issues with Mr. Roth

1    at the moment.
2              THE COURT:  Okay, good.
3              MR. ROTH:  He changed.
4              THE DEFENDANT:  That was in December.
5              THE COURT:  That's understood.  Okay, fine.  Thank you
6    very much.
7              MR. CHERNOFF:  Thank you, your Honor.
8              THE COURT:  Anything else?
9              MR. ROTH:  I would like to inquire about the
10   sentencing about it being partially concurrent, concurrent, or
11   any --
12             THE COURT:  I have no play in that match.  My sentence
13   is my sentence.  What his sentence is is his sentence.  I
14   gather he says concurrent, right?  If I understood it
15   correctly.
16             MR. ROTH:  He's already served that state sentence.
17   It was that state judge who recommended you consider imposing
18   yourself, I guess, nunc pro tunc or taking it in terms of a
19   variance.
20             THE COURT:  I take it that there will be none.
21             MR. ROTH:  Right.
22             THE COURT:  Yeah.  Good question, Mr. Stukes.
23             MR. ROTH:  As well as the mental health, the mental
24   health residential program.  When you're in a halfway house,
25   they have you attend mental health and drug treatment program.

1        THE COURT:  Yes.  Well, so you'll do that, but I'm not
2   making it a condition unless the probation officer thinks I
3   should.
4        What's your view of it, Mr. Stukes?  Do you want it?
5        THE DEFENDANT:  I don't need -- I don't feel I need
6   any mental health situation.  When I was -- when I was on
7   supervised release the first time, I attended the mental health
8   service to where it was finished.
9        THE COURT:  Okay.  If you want it, you got it.  A
10  condition also of supervised release will be participation in a
11  mental health program.  Anything else?
12       THE DEFENDANT:  No, I don't want it.
13       THE COURT:  Oh, you don't want it.
14       THE DEFENDANT:  No.  I don't need it.
15       THE COURT:  Oh, all right.  My last condition is
16  withdrawn.
17       Thank you all.  Good-bye.
18       MS. POWELL:  Wait, your Honor.  I fear, your Honor,
19  that we're going to have the same issue again, and we're going
20  to need to have a status conference.  I just want it to be
21  clear what your Honor is imposing.
22       Now, what I understood, and your Honor could correct
23  me if I'm wrong, is that Mr. Stukes is going to get 14 months'
24  custody, he's going to get a term of supervised release for 18
25  months, followed by special conditions with outpatient and drug

```
 1   treatment, not residential but outpatient drug treatment,
 2   mental health treatment, and a search condition.
 3            THE COURT:  I'll skip the mental health, just the --
 4            MS. POWELL:  So just the outpatient drug treatment and
 5   the search condition.
 6            THE COURT:  Yes.
 7            MS. POWELL:  I would also ask, your Honor, there was
 8   also a condition in the past about his unemployment.  So if
 9   he's unemployed, that he's required to do vocational training.
10            MR. ROTH:  I don't have a problem.  He got an offer
11   today from Wendy's where he worked that they'll employ him.
12            THE COURT:  Okay, good.  Anything for me to do in that
13   context?  Okay.
14            MR. CHERNOFF:  Thank you, Judge.
15            THE COURT:  Thank you.
16            (Adjourned)
17
18
19
20
21
22
23
24
25
```